IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **RAIHAN HABIB**, <br> *Plaintiff,* <br><br> v. <br><br> **AQUASCAPE DESIGNS, INC.**, <br> *Defendant.* | **CIVIL ACTION** <br><br> No. 24-2417 |

Henry, J. */CH*  April 9, 2025

<u>**MEMORANDUM OPINION**</u>

In early September 2023, a company headquartered in St. Charles, Illinois hired Raihan Habib as a remote worker. By early October, Habib had been brought to Illinois and other states for weeks of training, begun remote work, and been fired. Habib contends that his treatment and firing were unlawful, and he sued the company in this district. His former employer, Aquascape Designs, Inc., moves to transfer the case to the district where it has its headquarters.

The decision of whether to transfer venue is put to my discretion. Having considered the various factors raised by the parties, I now rule that the adjudication of Mr. Habib's firing will occur in Pennsylvania, because it is a location he lawfully chose and because I am not persuaded that the reasons to move the case to Illinois outweigh his choice and other reasons to keep the case here.

I.  <u>**BACKGROUND**</u>

I rely on the allegations in the complaint, as well as the briefing and exhibits on the motion to transfer. *Beaumont v. Vanguard Logistics Servs. (USA), Inc.*, 615 F. Supp. 3d 253, 259 (D.N.J. 2022) (permitting consideration of evidence beyond the pleadings, including affidavits "and other evidence"). In September, 2023, Raihan Habib was hired by Aquascape Designs, Inc., a designer

1

and installer of residential and commercial water features. Aquascape's headquarters is in St. Charles, Illinois. Mr. Habib is a resident of Collegeville, Pennsylvania. The arrangement began with one or two weeks of on-site training at the headquarters and "in the field" in South Carolina and Iowa. By the time Habib was fired, he was no longer in St. Charles.[1]

Habib alleges that he suffered worse treatment than other employees and was fired due to illegal discrimination by Aquascape management because of his race, national origin, and/or religion. He alleges that he was subjected to sensitive personal questions revealing that the empty reasoning for his firing, his being "not a good fit," was pretextual.

By the time he was terminated, he had been working remotely for perhaps a few weeks, but substantial portions of the events that allegedly led to his termination—and the evidence that would be necessary to prove them—come from the period while he was working in-person in St. Charles. Every known fact witness in the case save one is located near St. Charles. The company's records exist there. Aquascape states that the decisions to hire and to fire Habib were made by employees in St. Charles.

## II.  **LEGAL FRAMEWORK**

The parties agree that this case could initially have been brought in federal court in the Northern District of Illinois as well as the Eastern District of Pennsylvania.[2] *See* 42 U.S.C. § 2000e-5(f)(3) (permitting venue for a Title VII case where the challenged employment action occurred, or where records thereof are kept, or where the work would have been done if not for

---

[1] Habib's location at the time of his termination is not perfectly clear. *See infra* § III.C., considering where the claim arose.

[2] Habib's Brief in Opposition (ECF No. 7-1) reads the Motion to Transfer to argue that venue is not proper in the Eastern District. Resp. at 5. I do not read Aquascape to make that argument. In any event, Aquascape clarified in its reply and at a hearing that it did not object to venue being proper in this district, and it does not bring its motion under Rule 12. ECF 8 ("Reply") at 6.

the employment action). The question of whether to transfer the case to another venue in which it could have been brought initially, as the parties also agree is the case here, is left to my discretion upon an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). Statutory authority for discretionary transfer comes in 28 U.S.C. § 1404(a), which states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action" to another district.

These interests have been further delineated into several factors, as the Third Circuit laid out in *Jumara v. State Farm*, 55 F.3d 873 (3d Cir. 1995), and the parties agree that an accounting of these factors is what must guide my discretion. In particular, *Jumara* observed the following list of interests for a court to consider:

> The private interests have included: plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).
> The public interests have included: the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Id*. at 879–80 (cleaned up). Notably, the *Jumara* court itself collected the factors with the disclaimer that, "there is no definitive formula or list of the factors to consider." *Id.*

To prevail in transferring the case, the burden is on the movant to show that "a balancing of proper interests weigh[s] in favor of the transfer." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970). Balancing the interests may not always be straightforward, but as a rule of thumb, "transfer is not to be liberally granted." *Id.* In other words, "the plaintiff's choice of venue should not be lightly disturbed." *Jumara*, 55 F.3d at 879 (citation removed).

## III. DISCUSSION

The question in the present case is about the suitability of a remote worker's district of residence as a venue for challenging his employer's disparate treatment and termination. The movant addresses this in the process of exhausting the *Jumara* factors, and I follow that lead;[3] the long list of factors to consider makes "a written opinion setting forth the reasons for transfer . . . highly desirable." 55 F.3d at 880. In the present circumstances, I agree that these factors ensure that I properly address the interests of justice (and convenience of the parties) under § 1404(a).

### A. The "Paramount Consideration" of the Plaintiff's Preference

The first private interest is the most important: The plaintiff's preference, "as manifested in the original choice," i.e. where he filed suit. As Aquascape concedes, this choice of forum is "entitled deference." Pl. Mot., ECF No. 5 at 10. The courts have therefore laid the burden to transfer on the movant, instructing that Court should not "lightly disturb" the plaintiff's choice. The Third Circuit has described this first factor as the "paramount consideration." *Shutte*, 431 F.2d at 25.

Aquascape argues that the choice is due less deference here because the forum "is not the situs of the occurrence upon which the suit was based," Mot. 10, citing *Darden v. Trans Union, LLC*, No. 11-cv-6310, 2012 WL 1071227, at *2 (E.D. Pa. Mar. 30, 2012) and *Rowles v. Hammermill Paper Co., Inc.*, 689 F. Supp. 494, 496 (E.D. Pa. 1988). I am not convinced by the provided authorities. In *Darden*, the court evaluated the deference to pay to a plaintiff's choice as a precursor to considering the *Jumara* factors. Proposing that the plaintiff's choice may be entitled to less weight, *Darden* itself cited *Harris v. Nat'l R.R. Passenger Corp.,* 979 F.Supp. 1052, 1053

---

[3] The motion's procession through each *Jumara* factor is perfectly adequate, but I do get the sense that the factors could be reinterpreted within the confines of a remote worker employment.

(E.D.Pa.1997). In *Harris*, the plaintiff chose a forum which was "*neither* his home *nor* the situs." *Id.* (emphasis added.) *Darden* then combined the facts 1) that the defendant's activities within the original district were "insignificant," 2) that the *plaintiff did not reside in the original district*, and 3) that "virtually none of the events giving rise" to the case took place in the district to decide that the plaintiff's choice of forum was "entitled to less weight." *Darden*, 2012 WL 1071227 at *2. Similarly, in *Rowles*, the court reasoned from the combination of the plaintiff's *not being a resident* of his chosen forum *and* that "none" of the underlying case occurred in the target forum. 689 F.Supp at 496. In sum, each of these decisions premised their decisions to defer less to the plaintiff's choice in part on the plaintiff being a non-resident of the forum it chose.

Even leaving the question of Habib's residency aside, I question whether this analysis packs together factors that were intentionally separated. *Jumara* already says the Court should consider "whether the claim arose elsewhere" as the third listed private factor. Following Aquascape's and *Darden*'s analysis, I would wind up considering the "situs" of the case twice over: First to detract from the weight of Habib's otherwise dominant preference, and then a second time to weigh against that preference. Given *Jumara*'s laying out of separate factors, only the first of which is accorded special weight, the decision might imply that each factor should be weighed beside the others, not double-counted. On the other hand, several of these factors are necessarily and factually overlapping: For instance, Aquascape's preference (the second factor) seems almost certainly to draw on the convenience to itself, its employees, and its books (the fourth). The "local interest" and public policy and "whether the claim arose elsewhere" factors may similarly rhyme in many cases if they do not perfectly overlap, as well as court congestion and judicial economy. It may be that all of this reduces to a practically semantic distinction: Whenever the court considers each of several factors on two sides of a motion, it can equivalently add weight to one side (taking

5

into consideration the situs outside Pennsylvania) or subtract it from the other (giving Habib's choice less consideration because the situs was outside Pennsylvania). I think that it need not do both.

But all of this ignores the substantially distinguishing factor that Habib *does* live in the Eastern District, unlike Darden, Rowles, and Harris (and the Jumaras, for that matter, 55 F.3d at 879–80). The question of where Habib's claim "arose" is itself not perfectly clear. *See infra* § III.C. Therefore, given his residency in this district, I do not find that Habib's preference is due less consideration, and I need not delve further into the fine calculation of whether the paramount consideration becomes less paramount before or after weighing it with everything else. I will not "lightly disturb" the plaintiff's choice, but I will weigh it together with the other factors.

### B. Defendant's Preference and the Balance of Conveniences

Aquascape's preference is to transfer the forum, another factor for the Court to consider. Aquascape does not reveal any reason for its preference except through arguing the other factors (including the balance of convenience) and noting that "all relevant, operative facts occurred in St. Charles, Illinois." Mot. 11. I do not find its otherwise unexplained preference to be especially weighty.

As to the related factor of convenience to the parties, witnesses, and records, Aquascape argues that Illinois "serves as a geographically central and practical venue." *Id.* at 13. There are simply more people and more schedules and more pieces of paper to assemble and examine in this case in Illinois than Pennsylvania. This is a serious consideration, but I weigh these conveniences against that of Habib were he to remaining in Pennsylvania, where he lives. Although not included in the listing of factors quoted above, *Jumara* does offer an additional concern that arises in this context: the "relative physical and financial condition of the parties." 55 F.3d at 882. Habib

6

suggests without evidence that Aquascape is in better financial condition to arrange travel than he is, ECF 7-1 ("Resp.") at 7, which Aquascape essentially concedes, ECF 8 ("Reply") at 7 ("primary argument . . . that it would be more financially convenient . . . is just one factor"). *See also Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 505 (9th Cir. 2000) (transfer to remote employer's venue of choice "would create a substantial burden on plaintiffs working for national sales companies, a burden inconsistent with the beneficent purposes of Title VII").[4] Aquascape correctly characterizes Habib's financial convenience as "just one factor," *id.*, but the same goes for Aquascape's financial convenience. Habib contends that Aquascape might otherwise force him to appear for a deposition in Illinois, Resp. 7., which Aquascape in its Reply disclaims, Reply 7.[5] Yet its argument that "this case is not merely about travel for depositions," *id.*, does not identify much else for my attention.

Taken together, I find convenience to be only a minor consideration here. As the parties agree, digital discovery, including deposition by video, negates a substantial portion of the inconvenience. I further note that Aquascape is represented by counsel based in Philadelphia. *See Jumara*, 55 F.3d at 882 n.6 ("The financial condition of the Jumaras might make the Middle District more convenient to them, but since their present counsel is from Philadelphia that consideration would appear muted.")

---

[4] I am also mindful of a larger dynamic between remote workers with discrimination claims against their employers: It may be far harder for a remote worker to detect and prove disparate treatment in the first place, since she has less insight into the treatment of her peers. *Hale v. Iancu*, No. 3:19-CV-1963 (VLB), 2021 WL 9405460, at *11 (D. Conn. Feb. 23, 2021) (noting "separation and isolation of gig and remote work" creates less frequent and more virtual interactions, which makes things more difficult for a discrimination plaintiff). Neither side raises the issue, and I do not discern a way in which it should guide consideration of this motion.

[5] Habib himself notes that standard digital discovery exchange and videoconference protocols should allay any concerns about travel costs, Resp. 8, although plainly things would be very different were the case to go to trial.

### C. Whether the Claim Arose Elsewhere

Much of Aquascape's motion deals with the question of where this case arose. If the work was remote, where did the alleged disparate treatment and termination occur?

Even as a factual matter, the matter is unclear for now. The Complaint lays out several important moments leading up to the firing that seem to have occurred while Habib was in St. Charles, but the timing and locations are not certain, and some may be in dispute. For instance, the Complaint indicates that Habib was in St. Charles during his first two weeks of work, which would line up with September 3–17. Compl. ¶¶ 24–28. It does not specifically allege the location of meetings, although one with Hammer and Adams implicitly occurred in St. Charles given that it was during his first week. *Id*. ¶ 29. The next, now with Wittstock and forming a core part of the complaint, occurred on September 18, and the location and mode are unclear. *Id.* ¶¶ 30–35. The termination is alleged to have come "on or about October 4, 2023, just a month into his employment," and over a call. *Id*. ¶ 42. Confusingly, the Complaint also alleges that "in or around the end of September 2023, *during the first two weeks* of Plaintiff's employment, Plaintiff participated in the field training in South Carolina and Iowa," *id.* ¶ 36 (emphasis added), making the timeline in those other states a bit unclear. (Perhaps this means the first two weeks *after training in Illinois*?) Aquascape then provides a declaration by a human resources officer that Habib had been working for a month and was in field training in the Southeast on his last day of employment.

Aquascape asserts that any alleged action took place in Illinois, but it does not offer much argument about where an employment action occurs for a remote worker. In its initial motion, it offers little more than the provision in Title VII that discusses venue, 42 U.S.C. § 2000e-5(f)(3), but as mentioned above that statute merely provides for venue in multiple locations; if anything, that might indicate that termination (and perhaps the prior mistreatment) occurs in several places

8

at once. Habib responds with several authorities (albeit in his section regarding the application of the Pennsylvania Human Relations Act) proposing that the claim arises where the remote worker works. E.g. *Dilmore v. Alion Sci. & Tech. Corp.*, No. CIV.A. 11-72, 2011 WL 1576021, 2011 U.S. Dist. LEXIS 43244 at *7 (W.D. Pa. Apr. 21, 2011). Aquascape in reply raises the matter of *Wayne v. Fuji Photo Film USA, Inc.*, Civ. No. 07-5536, 2008 WL 3832406, 2008 U.S. Dist. LEXIS 62255 (E.D. Pa. Aug. 14, 2008), in which transfer was granted to the district of a remote worker plaintiff's workplace. Aquascape neglects to mention that Wayne "generally worked out of his home office" but "was technically employed out of defendant's Edison, New Jersey office, and *for the last four years of his employment much of plaintiff's time was spent in the Edison office*," a very different scenario. *Id*. at *2 (emphasis provided).

Having reviewed the authorities, what is clearest is that courts take seriously the Supreme Court's admonition that transfer be considered in a fact-specific, case-by-case basis. At this time, I have only scant facts about the location where these events occurred for the majority of the time Habib was employed. Since at least one meeting was a call (presumably over some distance), I have some basis to say that the actions "occurred" in multiple places at once. Lacking any stronger factual or legal basis on which to assert that the claim arose specifically in Illinois—and not in Pennsylvania or one of the other locations, where perhaps Habib was working at the time he was fired—I give this factor very little weight.

### D. The Public Factors

Reviewing the public factors identified in *Jumara*, I do not believe any are of much value to the present analysis. The court has no particular reason to be concerned about the enforceability of its judgment, which Aquascape concedes "may generally favor transfer to Illinois" at best. Mot. 6–7. Similarly, court congestion and judicial economy are very minor concerns for a single case

9

that is unlikely to raise any special issues for adjudication. (Aquascape concedes that congestion if anything militates against transfer, given N.D. Ill.'s apparently busier dockets. *Id.* at 7.) As for the local interest in determining local controversies, I find that the interests of northern Illinoisans in adjudicating a local company's dispute with a remote worker are roughly equal to those of eastern Pennsylvanians in adjudicating a local worker's dispute with a remote employer; neither framing strikes me as a minor or distant concern, nor does other appear far weightier than the other. Similarly, the parties essentially concede that public policy and judicial familiarity with the issues are non-issues where the law concerned, even the state law, is effectively identical in function across the two venues.

### IV. **CONCLUSION**

Having weighed all the above factors, I see little reason to transfer the case away from the venue chosen by the plaintiff. I therefore <u>deny</u> Aquascape's motion to transfer. An order to that effect will accompany this memorandum.

As the case will proceed in this Court, I will also issue an order incorporating the parties' joint recommendation for scheduling.